IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

APPLE, INC.,                          )
                                      )
                 Plaintiff,           )
                                      )
        v.                            )        Civil Action No. 1:21cv1003 (TSE/JFA)
                                      )
GANG CAO,                             )
                                      )
                 Defendant.           )
_____ )

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiff's motion for default judgment pursuant to

Federal Rule of Civil Procedure ("FRCP") 55(b)(2).  (Docket no. 20).  In this action, plaintiff

Apple, Inc. ("plaintiff" or "Apple") seeks entry of default judgment against defendant Gang Cao

("defendant" or "Cao").  Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge

is filing with the court his proposed findings of fact and recommendations, a copy of which will

be provided to all interested parties.

### Procedural Background

On August 30, 2021, plaintiff brought this action seeking (1) *de novo* review of a

decision by the Trademark Trial and Appeal Board ("TTAB") pursuant to 15 U.S.C.

§ 1071(b)(1), (2) reversal and vacatur of the TTAB's decision sustaining defendant's opposition

to plaintiff's application for federal trademark registration, and (3) a declaratory judgment that

plaintiff's trademark is valid and enforceable.  (Docket no. 1).  On September 3, 2021, plaintiff

filed a motion for an order directing service upon defendant—a resident of Canada—by

registered international mail pursuant to 15 U.S.C. § 1071(b)(4) or, alternatively, service by

registered mail on defendant's U.S. counsel in the TTAB opposition proceeding.  (Docket no.

12).  The court granted plaintiff's motion on September 8, 2021 and directed plaintiff to serve

defendant by mailing a copy of the summons and complaint by registered international mail with

return receipt to defendant's last known address.  (Docket no. 15).  On October 12, 2021,

plaintiff filed an affidavit certifying compliance with the court's September 8, 2021 order and

confirming that defendant indicated by email to plaintiff's counsel that he received a copy of the

complaint, summons, notice, and order directing service by registered mail.  (Docket no. 16).

On December 6, 2021, the District Judge entered an order directing plaintiff to seek an

entry of default from the Clerk of the Court pursuant to Federal Rule of Civil Procedure 55(a)

and to file thereafter a motion for default judgment and a notice of hearing for January 14, 2022

at 10:00 a.m.  (Docket no. 17).  On December 7, 2021, plaintiff filed a request for entry of

default as to defendant, (Docket no. 18), and default was entered on December 8, 2021, (Docket

no. 19).  On December 18, 2021, plaintiff filed a motion for default judgment, a memorandum in

support, and a notice of hearing for January 14, 2022.[1]  (Docket nos. 20, 21, 22).  At the hearing

on January 14, 2022, counsel for plaintiff appeared, but nobody appeared on behalf of defendant.

## Factual Background

The following facts are established in the complaint.  (Docket no. 1) ("Compl.").

Plaintiff is a California corporation with its principal place of business in California.  (Compl.

¶ 11).  Plaintiff designs, manufactures, and markets smartphones, personal computers, tablets,

---

[1] Plaintiff did not serve defendant with a notice pursuant to *Roseboro v. Garrison*, 528
F.2d 309 (4th Cir. 1975) and Local Civ. R. 7(K).  Plaintiff's position is that a *Roseboro* notice
was not warranted because the rule applies to a defendant who has appeared personally *pro se*,
and defendant never appeared or pleaded in response to the complaint, personally or by a
representative.  The undersigned notes that defendant had twenty-seven (27) days to respond to
plaintiff's motion for default judgment before the hearing and that he will have fourteen (14)
days to file a response to this report and recommendation.  For these reasons, any failure to
comply with Local Civ. R. 7(K) was harmless.

and related accessories, software, and services. (Compl. ¶ 17). On September 9, 2015, plaintiff announced a new feature for its iPhone product line, which it named "Live Photos." (Compl. ¶ 18). The Live Photos feature allows users to record a still image alongside a snippet of video for one and a half seconds before and after the photo is taken and combines them into a hybrid medium. (Compl. ¶ 18). Users can press down on the image, which is then transformed from a still photo into a short moving image with sound. (Compl. ¶ 18). After plaintiff announced the Live Photos feature at an Apple Special Event in San Francisco, several national media sources ran stories that highlighted it, and searches for "live photos" on Google increased significantly. (Compl. ¶¶ 19, 20, 21). The Live Photos feature has been included in iPhone and iPad devices and Mac computers, and plaintiff has promoted it in television commercials, print ads, and on plaintiff's website. (Compl. ¶¶ 22–27). National media sources have continued to report on plaintiff's Live Photos feature since its launch in 2015. (Compl. ¶ 28).

Defendant is an individual residing in West Vancouver, British Columbia, Canada. (Compl. ¶ 12). Defendant has never offered any products or services using the phrase "live photos" or filed an application for trademark registration of "live photos," and defendant does not offer a product similar to plaintiff's Live Photos software. (Compl. ¶ 30). As of September 2015, defendant was the registrant of two domain names containing the phrase "live photos"— livephoto.com and livephoto.ca. (Compl. ¶ 31). Defendant registered these domain names in 2011, but they were listed for sale until plaintiff's announcement of the Live Photos feature in 2015. (Compl. ¶¶ 31, 32). Following plaintiff's Live Photos announcement, defendant registered sixteen (16) other domains that included the phrase "live photos," but he did not use any of the domains to promote or sell any products. (Compl. ¶ 32). Defendant used the livephoto.com and livephoto.ca domains to host static images until December 2017, at which

point he deactivated both websites, and both websites remained inactive as of the proceedings before the TTAB.[2]  (Compl. ¶ 32).

In January 2016, plaintiff filed a trademark application with the United States Patent and Trademark Office ("USPTO" or "PTO") to register the mark "LIVE PHOTOS" for "[c]omputer software for recording and displaying images, video and sound."  (Compl. ¶ 1).  The assigned USPTO examiner determined that the LIVE PHOTOS mark was suggestive and approved plaintiff's application for publication without requiring proof of secondary meaning.  (Compl. ¶ 49).  On January 17, 2018, defendant filed an opposition with the TTAB against plaintiff's LIVE PHOTOS trademark application, alleging that the proposed mark was generic and/or descriptive and that defendant would be damaged by its registration.  (Compl. ¶ 34).  The parties filed briefing and participated in an oral hearing before the TTAB on June 17, 2021.  (Compl. ¶ 35).  On June 28, 2021, the TTAB sustained defendant's opposition to plaintiff's trademark application.  (Compl. ¶ 36).  The TTAB found that defendant had standing to oppose plaintiff's application and that the term "LIVE PHOTOS" is generic, descriptive, and had not acquired distinctiveness.  (Compl. ¶¶ 36, 37).  On August 30, 2021, plaintiff filed a complaint seeking judicial review of the TTAB decision and a declaratory judgment that the LIVE PHOTOS mark is valid and enforceable.  (Compl. ¶¶ 43–57).

### Proposed Findings and Recommendations

FRCP 55 provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend."  A defendant in default admits the factual allegations in the complaint.  *See* FRCP 8(b)(6) ("An allegation—other

---

[2] Following the TTAB decision on June 28, 2021, defendant modified the domains with an "Under Construction" placeholder.  (Compl. ¶ 33).

than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). FRCP 55(b)(2) provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter when necessary to enter or effectuate judgment.

## Jurisdiction and Venue

A court must have both subject matter jurisdiction and personal jurisdiction over a defaulting party before it can render a default judgment. This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this matter involves a federal question arising under the Lanham Act. This court also has subject matter jurisdiction over this claim as an appeal from a TTAB decision under 15 U.S.C. § 1071(b).

This court has personal jurisdiction over defendant under 15 U.S.C. § 1071(b)(4). A civil suit challenging a decision of the TTAB may be instituted against an adverse party as shown by the USPTO records at the time of the decision complained of. *Id.* This court has jurisdiction over adverse parties residing in foreign countries in a § 1071(b)(1) action. 15 § 1071(b)(4). Personal jurisdiction is therefore proper because the complaint alleges that defendant—an adverse party in the underlying TTAB action—resides in Canada. (Compl. ¶¶ 12, 34). Venue is proper pursuant to 28 U.S.C. § 1391(b)(3), (c)(3) because defendant is a resident of a foreign country and is subject to this court's personal jurisdiction.

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that this court has personal jurisdiction over defendant, and that venue is proper in this court.

**Service**

Pursuant to 15 U.S.C. § 1071(b)(4), an adverse party residing in a foreign country may be served by publication or "otherwise as the court directs." On September 8, 2021, the court ordered plaintiff to serve defendant by mailing a copy of the summons and complaint by registered international mail with return receipt to defendant's last known address. (Docket no. 15). On October 12, 2021, plaintiff filed an affidavit certifying compliance with the court's order and representing that defendant confirmed by email that he received the complaint, summons, notice, and order for service by registered international mail. (Docket no. 16).

Based on the foregoing, the undersigned recommends a finding that defendant was properly served and had notice of this action.

**Grounds for Entry of Default**

In accordance with FRCP 12(a), defendant was required to file a responsive pleading by October 27, 2021, twenty-one (21) days after defendant was served by registered international mail pursuant to the court's September 8, 2021 order. (Docket nos. 15, 16). No responsive pleading has been filed by defendant, and the time for doing so has expired. On December 7, 2021, plaintiff filed a request for entry of default, (Docket no. 18), and the Clerk of the Court entered a default against defendant on December 8, 2021, (Docket no. 19). Accordingly, the undersigned magistrate judge recommends a finding that defendant was properly served, that he failed to file a responsive pleading in a timely manner, and that the Clerk of Court properly entered a default as to defendant.

**Liability and Relief**

According to FRCP 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because defendant is in default, the factual allegations in the complaint are deemed admitted. *See* FRCP 8(b)(6); *GlobalSantaFe Corp.*, 250 F. Supp. 2d at 613 n.3.

**Request for Judicial Review of the TTAB Decision (Count I)**

    *i.*   *Standard of Review*

Plaintiff seeks *de novo* review of the TTAB's findings in *Gang Cao v. Apple, Inc.*, Opposition No. 91239006 (T.T.A.B. June 28, 2021) and an order reversing and vacating the decision. (Compl. ¶ 44–47). Under 15 U.S.C. § 1071(b)(1), a party seeking review of a TTAB decision on registration of a proposed mark may file a new action in the district court as an alternative to an appeal before the United States Court of Appeals for the Federal Circuit.[3] *B & B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 144 (2015). In a § 1071(b)(1) action, the district court resolves the issue of registration *de novo* and may consider evidence not previously submitted to the TTAB. *Id.*; *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155 (4th Cir. 2014). The district court acts as the finder of fact and has independent authority to grant or cancel registration of a proposed mark. *Swatch AG*, 739 F.3d at 155.

Plaintiff is entitled to *de novo* review of the facts supporting registration of the LIVE PHOTOS mark. As a practical matter, this court's review is somewhat limited because no party

---

[3] As a procedural matter, plaintiff's complaint was timely filed. A plaintiff may file a § 1071(b)(1) complaint within sixty-three (63) days of a final decision of the TTAB. 15 U.S.C. § 1071(b)(1); 37 C.F.R. § 2.145(d)(3). Plaintiff filed this action on August 30, 2021, sixty-three (63) days after the TTAB's final decision in *Gang Cao v. Apple, Inc.*, Opposition No. 91239006 (T.T.A.B. June 28, 2021).

has moved to admit the PTO record, and the record is not currently before this court.[4]
Nevertheless, *de novo* review of the facts supporting registration is further appropriate here
because plaintiff asserts it has presented new evidence to the district court that was not raised
previously before the TTAB. *See Swatch AG*, 739 F.3d at 156 ("[W]here new evidence is
submitted, *de novo* review of the entire record is required because the district court 'cannot
meaningfully defer to the PTO's factual findings if the PTO considered a different set of facts.'")
(quoting *Kappos v. Hyatt*, 566 U.S. 431, 445 (2012)).  Plaintiff's memorandum in support of its
motion for default judgment highlights several new facts that were raised for the first time in its
complaint and that are now deemed admitted given defendant's default.  (Docket no. 22 at 12).
For example, plaintiff released a commercial highlighting Live Photos in February 2019, and
national press coverage of the Live Photos feature continued through 2021.  (Compl. ¶¶ 26, 28).
In contrast, defendant still has not used the phrase "live photos" to offer or promote any products
following the TTAB decision, and two products apparently referenced before the TTAB as
evidence of third-party use of the phrase are no longer commercially available.  (Compl. ¶¶ 33,
40, 41).  These facts are directly relevant to plaintiff's claims and are appropriate for the court to
consider *de novo*.

     ii.   *Defendant's Standing to Oppose Plaintiff's Trademark Application*

     As a preliminary matter, plaintiff argues that defendant lacked an entitlement to oppose
its application for registration of the LIVE PHOTOS mark.  (Docket no. 22 at 23–24).  Plaintiff
claims that defendant's failure to answer and his admissions that he does not offer a competing
product and has never used the mark in connection with any product are evidence that he lacks a

---

[4] In a § 1071(b) action, the PTO record need be admitted only on motion of a party. *See Swatch AG*, 739 F.3d at 155; 15 U.S.C. § 1071(b)(3).

"real interest" in the proceeding. *Id.* By sustaining his opposition, the TTAB evidently

determined that defendant had standing to oppose registration of the mark under 15 U.S.C.

§ 1063, which allows for "[a]ny person who believes that he would be damaged by the

registration of a mark" to file an opposition. Whether this determination was proper is not

relevant to the claims currently before this court. As noted above, the district court's role here is

to review the evidence *de novo*, and defendant inarguably has a legitimate interest in the outcome

of a challenge to a proceeding to which he was a prevailing party. *See Pro-Football, Inc. v.*

*Blackhorse*, 62 F. Supp. 3d 498, 504 (E.D. Va. 2014) ("[S]tanding before the TTAB necessarily

establishes sufficient interest in an appeal or review of the TTAB's determination of the

petition."). For this reason, reversal and vacatur of the TTAB decision cannot be justified based

on § 1063 standing alone.

### iii. *Distinctiveness of the LIVE PHOTOS Mark*

Turning to the merits of plaintiff's claims, plaintiff argues that (1) the LIVE PHOTOS

mark is not generic, (2) the LIVE PHOTOS mark is not descriptive, (3) the LIVE PHOTOS mark

is suggestive, or (4) if found descriptive, it has acquired distinctiveness or secondary meaning in

connection with plaintiff's goods and services. (Docket no. 22 at 12–23). For these reasons,

plaintiff seeks an order reversing the TTAB's denial of its application to register the LIVE

PHOTOS mark and requiring the Director of the USPTO to issue a certification of registration

for the mark. (Compl. ¶ 47).

Plaintiff argues that defendant has failed to meet his burden of establishing that the LIVE

PHOTOS mark is generic. (Docket no. 22 at 15–20). The Lanham Act allows for registration of

a mark that has become "distinctive" as used in connection with an applicant's goods in

commerce. *See* 15 U.S.C. § 1052(f). Courts interpreting the "distinctiveness" requirement have

established three primary categories of marks entitled to different levels of protection. *See Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996). Marks that are "fanciful," "arbitrary," or "suggestive" are considered inherently distinctive and are entitled to the highest trademark protections. *Id.* "Descriptive" marks may be registered only if they have acquired "secondary meaning," which is established by showing that the "primary significance" of the proposed mark is to identify the source of a product rather than the product itself. *Id.* Finally, "generic" marks are entitled to no protection. *Id.*

A mark is generic if its primary significance indicates the nature or class of the product, as opposed to its source. *Glover v. Ampak, Inc.*, 74 F.3d 57, 59 (4th Cir. 1996). Examples of generic marks include "Convenient Store," "Dry Ice," and "Light Beer." *Sara Lee Corp.*, 81 F.3d at 464. When assessing whether a proposed mark is generic, the court looks to the relevant class of products—*i.e.* those identified in the mark's certificate of registration—and the perceptions of members of the public that would be interested in purchasing those products. *Glover*, 74 F.3d at 59. The party alleging that the mark is generic bears the burden of establishing that "the primary significance of the mark to the relevant public is to identify the class of product or service to which the mark relates." *Id.* This burden can be met by offering evidence such as "purchaser testimony, consumer surveys, listings and dictionaries, trade journals, newspapers, and other publications." *Id.*

Defendant, as a party in default, has failed to meet his burden to prove that the LIVE PHOTOS mark is generic. As established in plaintiff's application for registration, the relevant class of products is "[c]omputer software for recording and displaying images, video and sound." (Compl. ¶ 1). Defendant has offered no evidence to this court to support a finding that the primary significance of the LIVE PHOTOS mark to the relevant class of consumers is to identify

10

computer software for recording and displaying images, video, and sound.  Phrased another way, defendant has not established that consumers primarily associate the phrase "live photos" with computer photo and video software generally as opposed to plaintiff's Live Photos feature.  *See Glover*, 74 F.3d at 59 ("[I]f [defendant] had carried his burden, we would find evidence in the record which establishes that when purchasers walk into retail stores and ask for white tails, they regularly mean any brand of pocket or hunting knife, and not specifically [plaintiff's] products.").

In contrast, plaintiff has offered substantial evidence to support a finding that the LIVE PHOTOS mark is not generic.  As established in the complaint, more than twenty (20) dictionaries and thesauruses lack definitions of the phrases "live photo" or "live photos," and the few that define the terms do so in reference to plaintiff's Live Photos feature.  (Compl. ¶¶ 2, 52).  Although not controlling, dictionary definitions are a useful resource for courts to consider in a genericness analysis when evaluating evidence of common usage.  *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 544–45 (4th Cir. 2004), *abrogated on other grounds by Verisign, Inc. v. XYZ.COM LLC*, 891 F.3d 481, 488 (4th Cir. 2018).  And although several of plaintiff's competitors offer a similar software feature, none use the phrase "live photos" to refer to their products.  (Compl. ¶ 2, 53).  This suggests that protecting the LIVE PHOTOS mark would not impose any real burden on competitors or consumers attempting to differentiate similar products.  *See JFJ Toys, Inc. v. Sears Holding Corp.*, 237 F. Supp. 3d 311, 333 (D. Md. 2017) (upholding the validity of marks that do not "erect expensive or syntactically convoluted barriers" to a competitor calling its product "by another easily definable and non-infringing name").  The complaint further establishes that media coverage of these features typically uses the phrase "live photos" only when referring to plaintiff's software, opting to use more general phrases like

"moving pictures" or "moving images" when referring to the type of feature. (Compl. ¶¶ 2, 3, 28, 54). Based on these factors alone, the undersigned recommends a finding that the LIVE PHOTOS mark is not generic.

In support of its motion for default judgment, plaintiff offered new evidence that the LIVE PHOTOS mark is not generic. (Docket nos. 22 at 27–30, 22-1, 22-2, 22-3). This evidence is not necessary to the court's findings because, as noted above, defendant has failed to establish that the LIVE PHOTOS mark is generic. *See Glover*, 74 F.3d at 59. However, the court finds this supplemental evidence relevant pursuant to its factfinding authority under FRCP 55(b). First, plaintiff submitted the results of a consumer survey developed and conducted by Dr. David Neal, a consultant and Executive in Residence at Duke University. (Docket no. 22-1). Dr. Neal surveyed three hundred and eight-eight (388) consumers about how they would refer to software for recording and displaying images, video, and sound. (Docket no. 22-1 ¶¶ 3.1, 4.4–4.5). Only one of the survey respondents used the phrase "live photos" in response to any question, suggesting that consumers do not view "live photos" as a generic term for photo and video software. (Docket no. 22-1 ¶¶ 2.2, 4.7). Plaintiff also submitted expert testimony from Dr. Edward Finegan, Professor Emeritus of Linguistics and Law at the University of Southern California Gould School of Law. (Docket no. 22-2). Dr. Finegan conducted a linguistic analysis of the phrase "live photos" and concluded that the phrase is not generic based on his review of several sources including dictionaries, naming conventions for competing products, press articles, plaintiff's own use of the phrase, and other evidence. (Docket no. 22-2 ¶ III.6). Finally, plaintiff provided expert testimony from Dr. Gregory Carpenter, Harold T. Martin Professor of Marketing at Northwestern University's Kellogg School of Management. (Docket no. 22-3). Dr. Carpenter reviewed marketing materials including press releases, online articles, videos, and

print ads, and he concluded that consumers associate "Live Photos" with plaintiff's brand due to plaintiff's unique and consistent marketing approach. (Docket no. 22-3 ¶ 15, App. B). This evidence is further support for the undersigned's recommended finding that plaintiff's LIVE PHOTOS mark is not generic.

A finding that plaintiff's LIVE PHOTOS mark is not generic does not automatically entitle it to trademark protection. As noted above, a mark may be registered if it is distinctive, meaning that it is fanciful, arbitrary, or suggestive, or that it is descriptive, but it has acquired secondary meaning. *See Sara Lee Corp.*, 81 F.3d 455 at 464. Plaintiff argues that its mark is entitled to registration because it is suggestive. (Docket no. 22 at 12–15). A suggestive mark is one that connotes some "quality, ingredient, or characteristic of a product," but that does not explicitly describe the product. *Teaching Co. v. Unapix Entm't, Inc.*, 87 F. Supp. 2d 567, 576 (E.D. Va. 2000). Suggestive marks require that a consumer "use his or her imagination to reach a conclusion as to the nature of the goods or to connect the mark with the goods." *Id.* Examples of suggestive marks include "Coppertone" sunscreen, "Orange Crush" soda, and "Playboy" magazine. *Sara Lee Corp.*, 81 F.3d at 464. In contrast, a descriptive mark describes "the intended purpose, function, size, desirable characteristic, use, or the nature of the product, or the class of users or end effect upon the user." *Teaching Co.*, 87 F. Supp. 2d at 576. Examples of descriptive marks include "Chap Stick" lip balm, "Food Fair" grocery stores, and "No Spot" car wash. *Id.* at 576 n.4. Unsurprisingly, the distinction between a suggestive and descriptive mark is a narrow one, and courts have long struggled with drawing a principled line in the sand. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1528 (4th Cir. 1984).

Although undoubtedly a close call, the unchallenged evidence supports plaintiff's claim that the LIVE PHOTOS mark is suggestive. Rather than explicitly identifying the function of the

13

Live Photos feature, the LIVE PHOTOS mark merely alludes to it, requiring additional information before a consumer can properly understand Live Photos as a software program that blends aspects of photographs and videos into a hybrid medium. (Compl. ¶ 2). Such a tenuous connection between the mark and the product requires the exercise of consumer imagination that courts have found to be characteristic of a suggestive mark. *See Pizzeria Uno Corp.*, 747 F.2d at 1528. Plaintiff highlights several factors that weigh in favor of a finding that the LIVE PHOTOS mark is suggestive.[5] As plaintiff notes, "Live Photos" could refer to software that creates very vivid pictures or pictures with a fixed lifespan or to a program that transmits pictures to an audience immediately upon their generation. (Docket no. 22 at 13). That the LIVE PHOTOS mark is open to interpretation is strong evidence that it is suggestive. *See Teaching Co.*, 87 F. Supp. 2d at 577. Furthermore, press coverage of the Live Photos feature at its launch included detailed explanations of how the software operates. (Compl. ¶¶ 28, 55). This would hardly have been necessary if the mark was sufficiently descriptive of the product.

Even if considered descriptive, the undersigned recommends a finding that the LIVE PHOTOS mark has nevertheless acquired secondary meaning. A descriptive mark is sufficiently distinctive as to warrant trademark protections if it has acquired secondary meaning. *See Sara Lee Corp.*, 81 F.3d at 464. Secondary meaning exists when consumers understand that the mark, used in context, refers to the specific product that it is intended to identify and not what it

---

[5] Plaintiff notes repeatedly that the USPTO examiner who reviewed its application found that the LIVE PHOTOS mark is suggestive, (Docket no. 22 at 1, 7, 14), but this is not particularly persuasive. USPTO determinations that a mark is suggestive or descriptive are entitled to "due regard" and are *prima facie* evidence of the mark's status, *see Lone Star Steakhouse & Saloon, Inc., v. Alpha of Va., Inc.*, 43 F.3d 922, 934 (4th Cir. 1995), but any probative value in the examiner's findings here is offset by the TTAB's conflicting finding that the mark is generic, *see Gang Cao v. Apple, Inc.*, Opposition No. 91239006 (T.T.A.B. June 28, 2021).

ordinarily describes. *Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990).

Factors relevant to this analysis include "(1) advertising expenditures; (2) consumer studies

linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product; (5)

attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use." *Id.*

Substantially exclusive and continuous use of a mark in commerce for five years before a claim

of distinctiveness arises is *prima facie* evidence that the mark has become distinctive.  15 U.S.C.

§ 1052(f).

      As an initial matter, plaintiff has established substantially exclusive and continuous use

of the LIVE PHOTOS mark in commerce for the requisite period, pursuant to § 1052(f).

Plaintiff launched the Live Photos feature in 2015 and has included it in versions of its iPhone

device since then and in versions of its iPad device since March 2016.  (Compl. ¶¶ 19, 22).  The

few limited examples of use of the LIVE PHOTOS mark by a party other than plaintiff appear to

have been minor and were largely inactive by the time plaintiff filed its suit.  (Compl. ¶¶ 40, 41).

Notably, although several of plaintiff's competitors offer a feature similar to plaintiff's Live

Photos software, none use the phrase "live photos" to describe their products.  (Compl. ¶¶ 2, 53).

This evidence is sufficient to establish a *prima facie* case that the LIVE PHOTOS mark is

distinctive.  *See* 15 U.S.C. § 1052(f).

      Several additional factors support a finding that the LIVE PHOTOS mark has acquired

secondary meaning.  *See Perini Corp.*, 915 F.2d at 125.  First, plaintiff's advertising

expenditures for the LIVE PHOTOS mark and its resulting revenue have been extensive.

(Compl. ¶¶ 3, 19, 22, 45).  Plaintiff has produced several commercials, print ads, press releases,

and website articles promoting the Live Photos feature, resulting in millions of impressions

15

among consumers.[6]  (Compl. ¶¶ 3, 19, 23–27).  The feature is pre-installed on plaintiff's iPhone

and iPad devices, which have generated billions of dollars in global sales for plaintiff.  (Compl.

¶¶ 22, 45).  Although the evidence does not establish what exact portion of plaintiff's advertising

expenditures or sales success is directly attributable to the Live Photos feature, it is clearly a

significant amount given the extent of plaintiff's national sales.  (Compl. ¶¶ 22, 45); *see Int'l*

*Bancorp, LLC v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192

F. Supp. 2d 467, 481 (E.D. Va. 2002).

      Second, although the record does not include any direct consumer studies, Dr.

Carpenter's undisputed expert testimony is relevant to determining consumer perceptions of the

LIVE PHOTOS mark as it relates to plaintiff.  (Docket no. 22-3); *see Wash. Speakers Bureau,*

*Inc. v. Leading Authorities, Inc.*, 33 F. Supp. 2d 488, 496 (E.D. Va. 1999).  Dr. Carpenter found

that plaintiff has invested heavily in building the "Live Photos" brand, which has led hundreds of

millions of customers to purchase devices equipped with the feature.  (Docket no. 22-3 ¶ 15).

Dr. Carpenter noted that plaintiff has utilized consistent marketing and presentation of the mark,

including consistent capitalization of the "Live Photos" brand, and he ultimately concluded that

"consumers perceive and understand Apple's use of 'Live Photos' as a brand name."  *Id.*  In

addition, Google trends data strongly supports a finding that consumers associate the LIVE

PHOTOS mark with plaintiff.  Online searches for "live photos" were essentially nonexistent

prior to plaintiff's announcement of the Live Photos feature in September 2015, and searches

---

      [6] In support of its motion for default judgment, plaintiff filed additional examples of its
promotional efforts for Live Photos, including a national commercial with NBA star Stephen
Curry, several press releases featuring the LIVE PHOTOS mark with a trademark symbol, and
additional advertisements and articles.  (Docket nos. 22-4, 22-5, 22-6, 22-7, 22-8).  As with the
survey evidence, linguistic testimony, and marketing expert testimony, the court concludes that
this evidence is not necessary to support its findings of secondary meaning, but that it is
nevertheless relevant pursuant to the court's factfinding role under FRCP 55(b).

increased significantly following the announcement. (Compl. ¶ 21). Plaintiff highlights in its memorandum in support of its motion for default judgment that a peak in searches in late 2017 corresponds with its launch of a new operating system that included an update for the Live Photos feature. (Docket no. 22 at 23). This evidence is uniquely probative of consumer perceptions about the relationship between plaintiff and the LIVE PHOTOS mark.

Finally, plaintiff's Live Photos feature has also been the subject of extensive and unsolicited media coverage. Between the feature's launch in 2015 and initiation of this suit in 2021, plaintiff's Live Photos software has been highlighted in hundreds of articles from national media sources. (Compl. ¶¶ 3, 20, 28, 45). Such consistent and widespread coverage from major news sources reflects that the LIVE PHOTOS mark has achieved secondary meaning. *See Washington Speakers Bureau*, 33 F. Supp. 2d at 496. For these reasons, the undersigned recommends a finding that the LIVE PHOTOS mark is distinctive and therefore entitled to registration.

**Declaratory Judgment of Validity and Enforceability (Count II)**

Plaintiff seeks a declaratory judgment that the LIVE PHOTOS mark is valid and enforceable. (Compl. ¶¶ 48–57). The Declaratory Judgment Act authorizes a federal district court to "declare the rights and other legal relations of any interested party," when the court has "a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). As noted above, the evidence establishes that the LIVE PHOTOS mark is suggestive and that it is therefore entitled to registration and the attendant protections that registration provides. For this reason, the undersigned recommends a finding that plaintiff is entitled to a declaratory judgment that the LIVE PHOTOS mark is valid and enforceable.

## Conclusion

For the reasons stated above, the undersigned recommends that a default judgment be entered in favor of Apple, Inc. ("plaintiff") and against Gang Cao ("defendant"). The undersigned recommends that the court reverse and vacate the TTAB decision in *Gang Cao v. Apple, Inc.*, Opposition No. 91239006 (T.T.A.B. June 28, 2021) and enter an order finding that plaintiff's LIVE PHOTOS mark is suggestive or, alternatively, that it is descriptive but that it has acquired secondary meaning, and requiring that the Director of the USPTO issue a certification of registration for plaintiff's LIVE PHOTOS mark. The undersigned further recommends that the court issue a declaratory judgment that plaintiff's LIVE PHOTOS trademark is valid and enforceable.

## Notice

Plaintiff is directed to mail by registered international mail a copy of this proposed findings of fact and recommendations to defendant's last known mailing address at PO Box 93053, Caulfeild Village, West Vancouver, British Columbia, Canada, V7W 3G4, and to email a copy to defendant at dabao@live.ca. By means of the court's electronic filing system and upon confirmation that plaintiff has mailed and emailed copies of this proposed findings of fact and recommendations to defendant, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 14th day of January, 2022.

_____ /s/ _____
John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia

19